UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DOUGLAS B. LETOHA and PAMELA A. BOUDOIN-AIMEE**          **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO.1:06CV1009 LTS-RHW**

**NATIONWIDE MUTUAL INSURANCE COMPANY**
**and JOHN DOE I-III**                                           **DEFENDANTS**

## MEMORANDUM OPINION

The Court has before it Nationwide Mutual Insurance Company's (Nationwide) motion [138] for summary judgment. For the reasons set out below, this motion will be granted in part and denied in part.

Plaintiffs are the named insureds under Nationwide Dwelling Fire Insurance policy number 63 23 T 450235. This policy, issued August 24, 2005, insures a dwelling and a separate building situated at 9430 Fournier Avenue, D'Iberville, Mississippi. The policy provides limits of coverage of $96,000 for the dwelling and $40,000 for the other building. The policy does not cover the contents of the two insured buildings. The Nationwide policy covers windstorm damage and excludes flood damage. The insured property is situated on the north side of Biloxi Bay east of Interstate I-110.

Plaintiffs are also the named insureds under a Standard Flood Insurance Policy (SFIP). The SFIP in force at the time of the storm had coverage limits of $13,900 applicable to the plaintiffs' dwelling, and this sum has been paid under the SFIP. There was a dispute between Nationwide and the plaintiffs concerning $136,100 in additional flood coverage for the dwelling. Plaintiffs asserted that their dwelling should have been insured against flood damage for $150,000. Plaintiffs' claims for this additional $136,100 was settled under the terms of a "partial settlement agreement" signed by Nationwide on April 5, 2006, and by the plaintiffs on April 17, 2006. Nationwide paid the plaintiffs the additional $136,100 in dispute. This settlement agreement contains a confidentiality provision, and the agreement provides that the $136,000 payment "in no way affects or releases the insureds claims relating to wind damage and Nationwide's acts and conduct relating to same." Thus, plaintiffs have collected $13,900 in flood insurance benefits under their SFIP and $136,000 in payments for Nationwide's alleged failure to provide this additional amount of flood insurance coverage. The total of these payments, $150,000, represents compensation for flood damage to the plaintiffs' dwelling, in my opinion. There are no flood damage claims now before the Court.

On August 29, 2005, the insured buildings were destroyed by the forces of Hurricane Katrina.  Plaintiffs reported their loss to Nationwide on September 20, 2005.  On November 6, 2005, a Nationwide claims adjustor, George Mangano, made an on-site inspection of the insured property.  After this inspection, on March 16, 2006, a second on-site inspection was carried out by Hal Cain, a representative of the engineering firm Cain & Associates.  Nationwide retained this engineering firm to give its assessment of the causes of the damage to the insured property.  The report following this second inspection states:

> *"This older home was destroyed by the combined effects of high wind pressures, but primarily extremely high storm surge and waves.  Its proximity to the Back Bay of Biloxi subjected it to a tidal surge of twenty to twenty-one feet with wave action.  Being at an elevation of 12 to 14 feet above sea level resulted in the home being completely inundated and pushed off its foundation piers by way of tidal surge, water pressure, and waves. . . Prior to the tidal surge, there is evidence of the possibility of some shingle and roof damage due to the sustained wind pressures from maximum sustained wind speeds of 81 to 89 mph for three hours prior to the storm surge and waves completely destroying the house.  Further, some windows could have been broken and along with breaches in the roof allowed rainwater to damage the interior ceilings, walls, flooring and interior furnishings."*

On July 20, 2007, Nationwide made "voluntary" payments of $35,854.55 for damage to the insured dwelling and $6,714.19 for damage to the storage building.  Nationwide made an additional payment of $4,500 for loss of rental value, but I cannot tell whether this payment was within the stated limits of $40,000 applicable to the other building or was paid under a different coverage.  In deciding this motion, the plaintiffs are entitled to the benefit of the doubt on this issue, and I will assume without deciding that this $4,500 payment was outside the limits of $40,000 applicable to the plaintiffs' other building.  Following these payments, the plaintiffs submitted additional information to Nationwide, and, on November 16, 2007, Nationwide made an additional payment of $24,865.76 for roof damage to the dwelling.  Each building was separately insured, and the payments Nationwide made for each of the two buildings can be identified.
The payment of flood insurance benefits and the payment made pursuant to the "partial settlement agreement" bring the plaintiffs' total insurance recovery to $217,434.50 ($150,000 for flood damage and $67,434.50 for wind damage).

|  | Dwelling | Other Building |
|---|---|---|
| Flood Damage Payments | 150,000.00 | 0 |
| Wind Damage Payments | 60,720.11 | 6,714.19 |
| Insurance Compensation Received | 210,720.11 | 6,714.19 |

Nationwide's motion for summary judgment is based on its contention that the plaintiffs have been made whole for the damage their property sustained during Hurricane Katrina. Nationwide contends that the pre-storm value of the insured property was less than $217,434.50. Nationwide has not segregated the payments it made to compensate for the damage to each of the two buildings.

In support of this contention, Nationwide has offered an appraisal of the insured property done in April, 2003. This appraisal used two methods of ascertaining the value of the plaintiffs' property. Using comparable sales, the appraisal indicated that the market value of the plaintiffs' property (land and buildings) was $225,000. Using a "cost approach," the appraisal indicated that the total value of the plaintiffs' property (land and buildings) was $237,950 with the estimated value of the land $155,500 including site improvements. Under this "cost approach," the estimated value of the two buildings was $82,450 ($97,000 less deprecation of $14,500). This valued the dwelling at $48,566 and the other building at $33,885.

Plaintiffs point out that this appraisal was over two years old at the time of the storm; that it represents only one person's opinion concerning the value of the insured buildings; and that there is other conflicting evidence of the value of the insured buildings. Plaintiffs point out that Randy L. Ponds (Ponds), an adjustor hired by Nationwide to evaluate flood damage to the dwelling, estimated that the damage to the dwelling, calculated on an actual cash value basis was $151,134.36 ($159,195.01 less depreciation of $7,560.65 and less a $500 flood deductible). Ponds made no estimate of the value of the other building.

Plaintiff Boudoin-Aimee estimates the pre-storm value of the other building to be $60,000. Obviously, the pre-storm value of the insured property is a fact in substantial dispute. In considering this issue in the context of Nationwide's motion for summary judgment, I must assume the values most favorable to the plaintiffs.

The plaintiffs assert the following highest values: $60,000 for the storage building (Plaintiff Boudoin-Aimee's estimate) and $159,195.01 replacement cost estimate of the dwelling by Ponds. Under the indemnity principle, these values represent the maximum insurance recovery the plaintiffs may collect from all their coverages for damage to the insured property. This is the sum that is necessary to make the plaintiffs whole for their property damage, i.e. the total destruction of the insured property during the storm.

|  | Dwelling | Other Building |
|---|---|---|
| Pre-Storm Value (Highest Estimate) | $159,195.01 | $60,000.00 |
| Insurance Compensation Received | $210,720.11 | $ 6,714.19 |
| Uncompensated Loss | 0 | $53,285.81 |

Plaintiffs assert that the payment of $136,100 made under their "partial settlement" with Nationwide should not be taken into consideration in calculating their right of recovery under the Nationwide fire policy.  Plaintiffs assert that this payment should not be considered flood insurance benefits.  Yet the damage that supported the plaintiffs' claim that Nationwide did not secure the proper amount of flood coverage was damage to their dwelling from flooding.  Plaintiffs appear to me to be contending that their contract with Nationwide, the "partial settlement agreement," can somehow override the indemnity principle, a rule of law that exists regardless of the terms of any agreement between the parties.  Adopting this approach would undermine the indemnity principle and potentially allow the plaintiffs to recover insurance benefits greater than the value of the insured property, a result that is against the public policy embodied in the indemnity principle.  I had hoped to make my view on this aspect of this case clear in my Memorandum Opinion and Order on Motion for Enforcement of Partial Settlement Agreement entered on July 12, 2007.   I see no equity or justice to support the plaintiffs' approach to this issue, and I will once again decline to adopt it.

Plaintiffs point out that the "partial settlement agreement" provides that the payment made under the agreement is not intended by the parties to offset or otherwise affect the plaintiffs' wind damage claim, and it does not.  What this payment affects, under the indemnity principle, is the amount of the plaintiffs' loss associated with their dwelling.  When Nationwide paid and the plaintiffs accepted $136,100 based on the plaintiffs' contention that this was the amount of flood insurance that should have been in place on the dwelling at the time of the storm, it was an admission by both parties that at least this amount of the damage to the plaintiffs' dwelling was attributable to flooding, and it reduced the amount of the plaintiffs' loss by this much.  It may be the case that all, none, or part of the plaintiffs' remaining losses (damage to the other building) are attributable to wind damage, but the indemnity principle limits the total recovery for the dwelling to the amount of the actual loss, and the Nationwide payments under the fire policy and under the "partial settlement agreement" reduce this loss dollar for dollar and completely compensate the plaintiffs for the loss of their dwelling.

Plaintiffs also contend that they did not receive the $136,100 Nationwide payment as compensation for flood damage, but only as consideration for the release of tort claims for bad faith misconduct on the part of Nationwide.  There are two problems with this contention: 1) the "partial settlement agreement" refers specifically to the plaintiffs' claim that Nationwide failed to secure an additional $136,100 in flood insurance, and 2) the plaintiffs were required to relinquish their claim for failure to secure this amount of flood insurance as consideration for the settlement.  The intent of the parties must be discerned from the written terms of the "partial settlement agreement."  While the plaintiffs may also consider the Nationwide payment as compensation for releasing their tort claims, accounting for the difference between the value of the dwelling and the amount of the payments under all coverages, the agreement itself unmistakably indicates that the payment was made to settle the dispute concerning the amount of flood insurance coverage that should have been in effect on the dwelling at the time of the storm.

After allowing a credit for the payments Nationwide has made to the plaintiffs, I find that the plaintiffs have been fully compensated for the storm damage to their dwelling.  Since the plaintiffs' other building was not insured for flood damage and since there was no claim that Nationwide made any error in securing flood coverage for the other building, I do not believe any of the $150,000 in flood benefits may properly be used to offset the plaintiffs' damages for the loss of the other building.  Plaintiffs' uncompensated loss for the other building is $53,285.81, and the remaining wind damage coverage is $33,285.81.

I cannot say, until I hear the evidence, whether Nationwide's anti-concurrent cause provision is applicable to the facts of this case.  The factual dispute concerning the timing, cause, and nature of the damage precludes entry of summary judgment on this basis.

Plaintiffs have asserted other grounds of recovery against Nationwide including bad faith misconduct, negligence, gross negligence, reckless and malicious conduct during the adjustment of the plaintiffs' claim, failure to train claims personnel, and negligent misrepresentation.  I will hear the evidence on these claims because at least some of the claims are premised on allegations that Nationwide's payments came so late that the delay is indicative of Nationwide's bad faith in adjusting the plaintiffs' claims.  While a claim for punitive damages may ordinarily not go forward unless the plaintiffs establish a right of recovery during the phase of the trial that deals with actual damages, the fact that the plaintiffs have been fully compensated for the damage to their dwelling does not foreclose their claim for actual damages, e.g. emotional distress, from Nationwide's alleged misconduct in delaying payments for an unreasonable period.

In accordance with the procedure outlined in Miss. Code Ann. § 11-1-65 (Supp.2007), the trial of this action will be bifurcated.  The jury will hear the evidence concerning the amount of wind damage sustained by the other building (the contract claim) and the evidence of actual damages sustained by the plaintiffs by reason of Nationwide's alleged misconduct.  After this initial phase of the trial, in light of the jury's verdict, I will consider whether the introduction of evidence in support of the plaintiffs' claims for punitive damages is appropriate.

Accordingly, Nationwide's motion [138] for summary judgment will be granted in part and denied in part.  The motion will be granted as to the plaintiffs' claims for additional insurance benefits for the damage sustained by the insured dwelling during Hurricane Katrina, under the indemnity principle.  The motion will be denied as to the plaintiffs' claims for damages sustained by the other building and as to the plaintiffs' claims for extra-contractual damages arising from the alleged misconduct of Nationwide's representatives during the adjustment of the plaintiffs' claim.  An appropriate order will be entered.

**DECIDED** this 28th day of February, 2008.

            s/ <u>L. T. Senter, Jr.</u>
            L. T. SENTER, JR.
            SENIOR JUDGE